IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pennsylvania Department of Revenue,<br>Petitioner | : | CASES CONSOLIDATED |
| | : | |
| | : | |
| v. | : | |
| | : | |
| Anthony Tellerinio (Office of<br>Open Records), | : | No. 773 C.D. 2025 |
| Respondent | : | |
| | : | |
| Scientific Games, LLC,<br>Petitioner | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| Anthony Tellerinio (Office of<br>Open Records), | : | No. 774 C.D. 2025 |
| Respondent | : | Argued: May 13, 2026 |


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE MATTHEW S. WOLF, Judge
          HONORABLE STELLA M. TSAI, Judge


OPINION BY
JUDGE COVEY                                    FILED: July 13, 2026


The Pennsylvania Department of Revenue (Department) petitions this Court for review of the Office of Open Records' (OOR) May 22, 2025 Final Determination Upon Reconsideration granting Anthony Tellerinio's (Requester) appeal and directing the Department to provide all responsive records within 30 days. Scientific Games, LLC (Scientific Games) also petitions this Court for review of the OOR's Final Determination Upon Reconsideration. There are three issues before this Court: (1) whether the OOR erred by modifying upon reconsideration

the Requester's request to the Department pursuant to the Right-to-Know Law (RTKL)[1] (Request); (2) whether the OOR erred by determining that the 12-digit entry/validation numbers (VIRN numbers) that Requester seeks are not a trade secret or confidential proprietary information of a third party exempt from disclosure under Sections 708(b)(11) and 102 of the RTKL, 65 P.S. §§ 67.708(b)(11) (exempting records that constitute or reveal a trade secret or confidential proprietary information), 67.102 (definitions thereof); and (3) whether this Court should conduct an in camera review.[2]

On November 26, 2024, Requester submitted the Request, seeking:

> [T]he existing document records sufficient to determine the winning 14-digit ticket [number] and 12-digit [VIRN number] of claimed top prizes of the top 3 prize level amounts for closed and active instant ticket games between 2020 and 2024 with a price point of $20[.00], $30[.00], and $50[.00.] The requested records containing the information might be known as, but not limited to[,] the copies of winning claim form, winning ticket[,] or validation report. Include relational database information on game sales data points such as sales, revenues, profits, losses, percent sold, percent remaining at the time the winning ticket pack was shipped[,] and at the time [the] claim was filed.

Certified Record (C.R.) at 16.[3] On January 6, 2025, after it invoked a 30-day extension to respond, *see* Section 902(b) of the RTKL, 65 P.S. § 67.902(b), the Department partially denied the Request, asserting that the responsive records pertaining to the VIRN numbers are part of the ticket validation process that is a trade secret and Scientific Games' confidential proprietary information. *See* C.R. at 11-13; *see also* 65 P.S. § 67.708(b)(11). On January 23, 2025, Requester appealed

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] This Court has reordered the issues for ease of discussion.

[3] Because the Certified Record pages are not numbered, this Court references electronic pagination herein.

to the OOR, challenging the Department's denial of the VIRN numbers. The OOR invited both parties to supplement the record and directed the Department to notify any third parties of their ability to participate in the appeal.

On February 26, 2025, the OOR received a Request to Participate from Scientific Games. That same date, the OOR granted Scientific Games Direct Interest Participant status. On March 12, 2025, the Department submitted a position statement, corresponding exhibits, and the Department's Deputy Agency Open Records Officer (ORO) Jesse Bible's affidavit made under the penalty of unsworn falsification to authorities. The Department reiterated that the requested records are Scientific Games' proprietary records and are not subject to public disclosure under Section 708(b)(11) of the RTKL. On that same date, Scientific Games submitted a position statement, corresponding exhibits, and Scientific Games' Senior Director and General Manager Tim Tobin's (Tobin) attestation (Tobin Attestation) made under the penalty of unsworn falsification to authorities, asserting therein that the VIRN numbers reflect Scientific Games' trade secrets and are confidential proprietary information. Scientific Games argued that the Department properly withheld the requested information because it is not subject to public disclosure under Section 708(b)(11) of the RTKL. Requester submitted a position statement indicating grounds for disclosure on March 12, 2025. Therein, Requester claimed that the requested information contains VIRN numbers that are public information once a lottery ticket is cashed or claimed. In a Final Determination issued on March 19, 2025, the OOR denied Requester's appeal.

On April 2, 2025, Requester filed a Petition for Reconsideration of the OOR's Final Determination (Reconsideration Request). Requester asserted that the Request seeks VIRN numbers for claimed and redeemed lottery tickets. He maintained that once a ticket is claimed, the VIRN numbers lose functionality upon redemption of the claimed tickets. Further, Requester insisted that since retailers

3

display VIRN numbers of claimed winning tickets, the value of the validation numbers of claimed prize tickets is not protected.[4] On April 7, 2025, the OOR granted the Reconsideration Request. On April 22, 2025, the Department and Scientific Games filed their respective responses, reiterated their arguments, and asked the OOR to deny the Reconsideration Request. On May 22, 2025, the OOR granted Requester's appeal and directed the Department to provide all responsive records within 30 days. The Department and Scientific Games appealed to this Court.[5] By August 22, 2025 Order, this Court, sua sponte, consolidated the matters.

The Department first argues that the OOR erred by modifying the original Request in its Final Determination Upon Reconsideration. The Department contends that Requester sought the VIRN numbers for the top three prize levels of claimed, closed, and active $20.00, $30.00, and $50.00 instant lottery games over a four-year period. The Department asserts that, on reconsideration, the OOR erroneously confused and conflated the technical, complex terminology involved in Scientific Games' ticket validation system, which, in turn, modified the original Request. The Department claims that the OOR also gave weight to Requester's unfounded assertions that the requested VIRN numbers were public.

Scientific Games similarly argues that instead of adjudicating the Request as submitted, the OOR adjudicated a narrower version of the Request - one shaped not by the Request itself, but by a confusing argument offered during the reconsideration process before the OOR. Scientific Games contends that Section

---

[4] At oral argument before this Court, the Department explained that VIRN numbers are never displayed; rather, due to the large amounts of the winnings for the particular records requested, the tickets are immediately locked away for security purposes.

[5] "In appeals from final determinations of the OOR regarding RTKL requests submitted to Commonwealth agencies, this Court is the ultimate fact[-]finder, and [it] exercise[s] a *de novo* standard of review. Section 1301 of the RTKL, 65 P.S. [§] 67.1301." *Se. Pa. Transp. Auth. v. Anderson*, 337 A.3d 575, 584 n.4 (Pa. Cmwlth. 2025).

4

703 of the RTKL, 65 P.S. § 67.703, does not permit clarification, narrowing, or modification of the Request during the appeal process. Scientific Games asserts that the Request sought a comprehensive compilation of winning ticket numbers and corresponding VIRN numbers for over 2,500 top-prize instant-game lottery tickets across multiple years and games - that Request, on its face, encompassed aggregated data not publicly available. Scientific Games insists that the Request did not distinguish between claimed and unclaimed tickets, nor did it limit itself to information already disclosed by retailers or posted online. Scientific Games emphasizes that by relying on an altered, reconsideration-stage argument to recharacterize the Request, the OOR evaluated - and ultimately ordered disclosure of - a different set of records than those actually sought, and that its reframing shifted the legal and factual analysis, avoided addressing the implications of disclosing the full set of records Requester actually requested, and failed to assess whether the Department's interpretation of the original Request was reasonable.

Requester rejoins that while the OOR erred in its initial determination by conflating the algorithm with the publicly-released numbers, the OOR, on reconsideration, properly corrected that error. Requester further retorts that the Department's and Scientific Games' claims that the Request was reframed is contradicted by the plain language of the original Request.

The Request sought:

[T]he existing document records sufficient to determine the winning 14-digit ticket [number] and [VIRN number] **of claimed top prizes** of the top 3 prize level amounts for closed and active instant ticket games between 2020 and 2024 with a price point of $20[.00], $30[.00], and $50[.00.] The requested records containing the information might be known as, but not limited to[,] the **copies of winning claim form**, winning ticket or validation report. Include relational database information on game sales data points such as sales, revenues, profits,

5

> losses, percent sold, percent remaining at the time the winning ticket pack was shipped[,] and at the time [the] claim was filed.

C.R. at 16 (emphasis added). The Request reveals that it has always only sought ticket numbers for **claimed** prizes. Accordingly, the Department's and Scientific Games' argument that the OOR modified the Request from claimed and unclaimed tickets to solely claimed tickets is without merit.

The Department next argues that the VIRN numbers are exempt from disclosure under Section 708(b)(11) of the RTKL because the VIRN numbers, an integral component part of the Scientific Games' ticket validation system, constitute or reveal trade secrets and confidential proprietary information of a third-party vendor of the Pennsylvania Lottery (Lottery). The Department contends that the VIRN numbers are part of Scientific Games' lottery ticket validation system - a numbering system developed by an algorithm that acts as a cross-validation measure, all of which Scientific Games designed, developed, and kept secret. The Department asserts that it serves as a ticket validation and security measure for the Lottery's protection, ensuring that the Department pays only valid winning claims.

Scientific Games likewise argues that the RTKL expressly exempts from disclosure any records that "constitute or reveal a trade secret." 65 P.S. § 67.708(b)(11). Scientific Games contends that the RTKL defines a "trade secret" as information, including a formula, drawing, pattern, compilation, including a customer list, program, device, method, technique, or process that: (1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. 65 P.S. § 67.102. Scientific Games asserts that the requested records fall squarely within this definition because the records reveal a "pattern" or "compilation" that is the product

6

of decades of investment, innovation, refinement, and safeguarding on Scientific Games' part. Scientific Games insists that the system is not a mere list of numbers, but the digital equivalent of a vault combination - the secret sequency that keeps the entire operation secure and competitors at bay. Scientific Games emphasizes that the Tobin Attestation, unrebutted by any contrary evidence, coupled with publicly available information regarding the lottery industry, establishes that Scientific Games' competitive position depends on the secrecy of its unique structure and sequencing. Scientific Games further argues that the requested records are excepted as confidential proprietary information. Scientific Games contends that "confidential proprietary information" is defined as "commercial or financial information received by an agency: (1) which is privileged or confidential; and (2) the disclosure of which would cause substantial harm to the competitive position of the person that submitted the information." 65 P.S. § 67.102. Scientific Games maintains that public visibility of the individual numbers strip the aggregated data of its confidential and proprietary character. Scientific Games articulates that the RTKL's exception is designed precisely to keep the algorithm and logic underlying Scientific Games' numbers out of the public's hands.

Requester rejoins that the Request is and always has been limited to VIRN numbers on claimed top-prize tickets, numbers that are physically printed on the tickets, revealed to the winner and retailer, entered into the Lottery sales terminal, recorded on claim forms and receipts, and frequently posted online by winners themselves. Requester retorts that once a prize is claimed, the validation number's security function is extinguished forever, and it becomes historical public information. Requester emphasizes that the Department's and Scientific Games' evidence proves only that Scientific Games' algorithm is secret and valuable while it remains secret; however, Requester has not requested the algorithm, and neither the Department nor Scientific Games offer any evidence whatsoever that individual

7

VIRN numbers retain any secrecy or competitive value after they have been publicly revealed through redemption, nor that compiling a list of such already-public numbers would cause substantial competitive harm. Requester insists that conclusory assertions of harm are legally insufficient.

Section 708(b) of the RTKL provides, in relevant part:

**Exceptions.**--Except as provided in subsections (c) and (d), the following are exempt from access by a requester under th[e RTKL]:

. . . .

(11) **A record that** constitutes or **reveals a trade secret or confidential proprietary information**.

65 P.S. § 67.708(b) (text emphasis added). Section 102 of the RTKL defines *trade secret* as:

**Information**, **including a** formula, drawing, **pattern**, compilation, including a customer list, program, device, method, technique[,] or process **that**:

(1) **derives independent economic value**, actual or potential, **from not being generally known to and not being readily ascertainable by proper means** by other persons who can obtain economic value from its disclosure or use; and

(2) is **the subject of efforts that are reasonable under the circumstances to maintain its secrecy**.

The term includes data processing software obtained by an agency under a licensing agreement prohibiting disclosure.

65 P.S. § 67.102 (emphasis added). Section 102 of the RTKL defines *confidential proprietary information* as:

**Commercial** or financial **information** received by an agency:

(1) **which is** privileged or **confidential**; and

8

(2) **the disclosure of which would cause substantial harm to the competitive position** of the person that submitted the information.

65 P.S. § 67.102 (emphasis added).

Here, Scientific Games provided the Tobin Attestation, wherein Tobin stated:

1. I serve as the Senior Director and General Manager for Scientific Games and am familiar with the information sought in the Request underlying the above-mentioned appeal before the [OOR].

2. The responsive information sought are [VIRN numbers].

3. The VIRN numbers are a numbering algorithm and cross-validation measure that was designed and developed by Scientific Games as a ticket validation and security measure to ensure that any winning ticket, including but not limited to unclaimed tickets, are not otherwise validated as winning tickets if accessed on [] [the] Lottery's online platform or sales terminal.

4. The [VIRN numbers] act[] as the password and encryption key to access game file records for secure lottery play.

5. The VIRN numbers ensure the accuracy of the lottery game and correctness of payouts under each game's rules and must be safeguarded because **release of this information would cause irreparable harm to Scientific Games**'[] obligation to its customers, and its own **competitive edge**.

6. The lottery game and solutions industry is highly competitive with only a small number of other companies operating within the arena.

7. **The VIRN numbers are** confidential because they are **unique to Scientific Games and the algorithm sets it apart from competitor companies**.

8. **Scientific Games** also **treats this information as confidential internally and security measures are taken**

9

**companywide to ensure that only a small**, **select group of employees have access to the information** and algorithm.

9. Scientific Games identifies confidential proprietary information and trade secrets, such as the VIRN numbers, within the company and **such information is accordingly marked as confidential**.

10. Within the company, **the VIRN numbers are stored with password protection**.

11. The VIRN numbers have independent and high dollar economic value because it is Scientific Games that created the unique algorithm to ensure the accuracy of lottery games that is not used by other competitors.

12. Further, **VIRN numbers** of Scientific Games [are] an economic driver of the company, and **are shielded from full company and public access in order to protect its ability to compete in the marketplace**.

13. The [VIRN numbers] [are] a critical differentiating factor separating Scientific Games from its competitors.

14. **Scientific Games'[] VIRN number[s] and algorithm [are] a critical reason that state lotteries chose Scientific Games over other competitors**.

15. **The [VIRN numbers]** [are] extremely sensitive and [their] **release would** allow competitors unauthorized access to Scientific Games'[] methods, techniques, and processes, **result**ing **in loss of market share and weakened competitive advantage**.

16. **Competitors** would benefit financially if they knew the details of the [VIRN numbers], as they **could** use [them] to mimic or undercut Scientific Games'[] proposals, disparage, or compare it against the competitor's information, or otherwise **use those details as part of their continuing efforts to take business away from Scientific Games**.

17. **Scientific Games has spent significant time, effort, and money in developing the VIRN numbers and has**

**kept [them] in strict confidence both companywide and from the public**.

18. For all these reasons, the **release of the [VIRN numbers] would unfairly cause Scientific Games to suffer substantial harm to its competitive position**, as well as cause harm to its customers, including the [Department].

19. I therefore maintain and assert that the [VIRN numbers] constitute[] and reflect[] Scientific Games'[] confidential proprietary information and its trade secrets.

C.R. at 72-73 (emphasis added).

In its Final Determination, the OOR concluded:

Requester insists that the VIRN [numbers] [are] already in the public domain and[,] therefore, [Scientific] Games cannot withhold already public information. However, [] Requester does not establish how the requested information is similar to the information in the public domain. [Scientific] Games has shown that the information is maintained by select employees and established the competitive value of the information. The information contained therein is not publicly available in the marketplace and [Scientific] Games closely guards this information. As such, the Department and [Scientific] Games may withhold this responsive information pursuant to [Section] 67.708(b)(11) of the RTKL.

Final Det. at 9-10 (citation omitted).

Requester clarified in the Reconsideration Request that the Request does not seek the algorithm data or records. In Requester's latest submission, he stated that Scientific Games' algorithm or security infrastructure is not at issue. Based on that clarification, the OOR reasoned:

Upon reconsideration, [Scientific] Games does not establish how the requested information sought is dissimilar to the information in the public domain. The [VIRN] numbers sought are publicly available in the marketplace. While the OOR understands that the [VIRN] numbers may become public for a claimed lottery ticket,

11

> this does not entitle [] Requester to the VIRN algorithm or access to the security measures taken by [Scientific] Games to protect such information. This Final Determination [Upon Reconsideration] is limited to the public [VIRN] numbers on claimed lottery tickets that are already in the public purview. As such, Requester is entitled to the information that is already in the public purview and not the VIRN algorithm information. The Department and [Scientific] Games may not withhold this responsive [VIRN] number information pursuant to [Section] 708(b)(11) of the RTKL.

Final Det. Upon Recon. at 7.

However, the OOR misconstrues Scientific Games' argument. Scientific Games represents that with the VIRN numbers, Requester will be able to determine Scientific Games' algorithm because it will "reveal[]," 65 P.S. § 67.708(b)(11), "pattern[s]," 65 P.S. § 67.102, from which Requester can reconstruct the algorithm. Although the VIRN numbers are made public at the time a winning ticket is claimed, the VIRN numbers are only revealed to the ticket purchaser, who submits it to the Lottery in order to claim his/her winnings. Thereafter, the winning ticket is locked in a secured vault. Further, those VIRN numbers are not revealed cumulatively and/or simultaneously but, rather, individually, if at all, and thus do not show the pattern that would lead to discovery of the algorithm. Because Scientific Games "derives independent economic value" from the VIRN numbers "not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from [their] disclosure or use[,]" and the VIRN numbers are "the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy[,]" the requested information is a trade secret. 65 P.S. § 67.102. Accordingly, the VIRN numbers are exempt under Section 708(b)(11) of the RTKL.[6]

---

[6] Based on this Court's disposition, it need not address the Department's last issue.

For all of the above reasons, the OOR's Final Determination Upon Reconsideration is reversed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pennsylvania Department of Revenue, | : | CASES CONSOLIDATED |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Anthony Tellerinio (Office of Open Records), | : | No. 773 C.D. 2025 |
| Respondent | : | |
| | : | |
| Scientific Games, LLC, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Anthony Tellerinio (Office of Open Records), | : | No. 774 C.D. 2025 |
| Respondent | : | |

## O R D E R

AND NOW, this 13th day of July, 2026, the Office of Open Records' May 22, 2025 Final Determination Upon Reconsideration is reversed.

_____
ANNE E. COVEY, Judge